69 So.2d 140 (1953)
CITY OF NEW ORLEANS
v.
BUFFA et al.
No. 20293.
Court of Appeal of Louisiana, Orleans.
November 30, 1953.
Rehearing Denied January 18, 1954.
DiRosa & DiRosa, New Orleans, for appellants.
Henry B. Curtis, City Atty., and Sidney C. Schoenberger, Asst. City Atty., New Orleans, for appellee.
REGAN, Judge.
Plaintiff, City of New Orleans, acting through its Mayor and City Attorney, instituted this suit on June 19, 1953, endeavoring to enjoin the defendants, Mrs. Clara Esposito Buffa, the owner, and Ernest Betat, Jr., the lessee, from using property designated by the municipal No. 1204 Burgundy Street, situated in an "H" Vieux Carre District, as a "Public Garage", in contravention of the provisions of Ordinance No. 11,302 C.C.S., adopted by the Council of this City on June 6, 1929, otherwise designated for the purpose of brevity as the Comprehensive Zone Law.
Defendants answered generally denying the essence of the petition and, in conclusion, insisted that Ordinance No. 11,302 C.C.S., as amended, and as it affects this property is unconstitutional in that it deprives defendants of the use of their property without due process of law and denies to them the equal protection of the law, in contravention of the 14th Amendment of the Constitution of the United States. However, in oral argument and in brief, counsel has abandoned the plea of the unconstitutionality of the ordinance.
From a judgment in favor of the plaintiff, the defendants have prosecuted this appeal.
The record, while relatively voluminous, reveals these uncontroverted facts: defendants *141 are the owner and lessee respectively of the property which is presently occupied and used as a "public garage", where self-propelled vehicles are stored, equipped for operation, repaired, or kept for remuneration, hire or sale and that the use thereof as a "public garage" is prohibited by virtue of Ordinance No. 11,302 C.C.S., as amended.
The Ordinance presently encompassing the Zoning Law of the City of New Orleans is No. 18,565 C.C.S. The effective date thereof was July 31, 1953, which was subsequent to the institution of this suit, however, it contains a provision which would permit defendants to continue to use the property as a "public garage" if the use thereof was considered "lawful" as of the effective date of its adoption. Therefore, of necessity, our consideration is properly confined to the Ordinance applicable herein which is No. 11,302 C.C.S.
The Comprehensive Zone Law of the City of New Orleans divides the metropolis into fifteen districts designated alphabetically "A" through "L", and enumerates the use to which the property may be subjected in the respective districts.
The defendants' property is situated in the "H" Vieux Carre District, where the operation of a "public garage" is not among the permissive uses thereof. Section 10 of the Ordinance reads in part as follows:
"(b) Existing Use of a Building or Portion Thereof. The lawful use of a building, or portion thereof, existing at the time of the passage of this ordinance may be continued except as hereinafter provided in paragraphs (c) and (d), although such lawful existing use of said building or portion thereof does not conform to the provisions hereof, provided, that the lawfully existing non-conforming use shall not be expanded so as to encroach into any other portion of the building, and provided further, that no structural alterations except those required by law or ordinance shall be made in the non-conforming building or non-conforming part of a building.
"If no structural alterations are made except those required by law or ordinance, and further, if the non-conforming square foot area and/or non-conforming cubical contents of a building or portion thereof occupied by a legally established non-conforming use are not increased, then a legally established non-conforming use of a building or portion thereof may be changed to other non-conforming uses of the same or more restricted classifications, but in no case exceeding two such uses.
"(c) Vacant Buildings or Vacant Parts of Buildings: No building or part thereof, used in whole or in part for non-conforming commercial or industrial purposes and located in a Residence or Apartment District, and no building or part thereof, used in whole or in part for non-conforming industrial purposes and located in a commercial district, according to the provisions of this ordinance, which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building is situated; provided, too, that this regulation shall apply to vacant buildings, or portions thereof, last used in whole or in part for non-conforming commercial or industrial purposes and situated in a Residence or Apartment District at the time of the passage of this ordinance, and shall also apply to vacant buildings or portions thereof last used in whole or in part for non-conforming industrial purposes and situated in a commercial district at the time of the passage of this Ordinance."
Plaintiff contends that the building was not used as a "public garage" from 1929 to 1945, but in contradistinction was a "private garage", which is defined by Section 1 of the Ordinance as a "garage used for storage only with a capacity for not *142 more than four (4) self-propelled vehicles or trailers and in which garage space for not more than two vehicles or trailers may be rented to persons not occupants of the premises." Therefore, plaintiff asserts that the building was conforming to the provisions of the Ordinance and, in consequence thereof, the property failed to acquire a non-conforming status at the time of the effective date of the ordinance, which was June 6, 1929.
In the alternative, plaintiff contends that if the property had established a non-conforming status in June, 1929, then plaintiff insists that the legal non-conforming identity has been lost by "vacancy" for a period in excess of six months.
Defendants in resisting the efforts of plaintiff to enjoin the present use of the property has maintained and endeavored to prove that the property was used in pursuance of a non-conforming purpose from 1929 to the present time. This contention, counsel asserts, is supported chronologically as follows:

(a) 1929 to 1947  Public Garage
(b) 1947 to 1949  Storage of Chickens
(c) 1949 to date  Public Garage for
 repair of automobiles

Therefore, counsel argues, if the garage has been used prior and subsequent to June of 1929 for any type or types of non-conforming use such as a "public garage" or the "storage of chickens" and has not for any continuous six months period been vacant or used for a conforming purpose, it may continue operating on a non-conforming basis.
In reply thereto, counsel for plaintiff focuses our attention upon the fact that from 1947 to 1949 the property was used for the "storage of chickens", which is permitted in an "H" Vieux Carre District, obviously the property was then subjecting itself to a conforming status under the Ordinance and it thereby lost its legal non-conforming identity.
At this point, counsel for defendants, while conceding the validity of the foregoing as a fact, conceived a very ingenious argument in support of the "continuance of the non-conforming status of the property from 1945 to 1949", to-wit: that the storage of chickens is "obnoxious or offensive by reason of the emission of odors" and, therefore, falls within the category of prohibited use set forth in Section 8, sub-section 63 of the Comprehensive Zone Law which reads as follows:
"* * * and in general those uses which may be obnoxious or offensive by reason of emission of odor, dust, smoke, gas or noise or vibration."
We have been impressed by arguments of both counsel, however, in the last analysis, we are of the opinion that the only question posed for our consideration is whether the property, in fact, acquired a legal non-conforming status by virtue of its continuous use for non-conforming purposes as of June 6, 1929.
We reiterate that the defendants have laboriously endeavored to prove that the property was used as a "public garage" and that space was rented therein for the storage of cars to four different people during the period from 1929 to 1945.
We have diligently read and analyzed the record and we, in consequence thereof, conclude that these are the facts: From 1924 or 1925 to 1945, the property was owned by one Perrino, who occupied an adjoining building forming the corner of Burgundy and Governor Nichols Streets as a retail grocery store; the property, which is the subject matter of this litigation, was used by Perrino in conjunction with the operation of his grocery business for the storage of wood, coal and, perhaps, other items. The evidence, as the testimony unfolded became increasingly vague and indefinite as to the additional use of this property during its ownership by Perrino, but considering it, in its most favorable reflected aspect, as it affects the defendants, it reveals that automobiles were garaged therein, the number thereof varied with the witnesses from one to two to three and occasionally four. Mrs. Anthony Beninato testified that she was the daughter of Perrino *143 and had resided in the building for "about twenty-nine years" or until it was sold in 1945 to defendant, Mrs. Buffa. She said her father, during this period, continuously rented garage space to owners of "three or four cars", one of whom was her brother who also resided in the same building. Upon being interrogated as to the names of the other owners of the cars, who occupied the garage simultaneously, she answered "I knew people by first name * * * one was my brother and was a nurse by the name of Elsie * * * one was named Dan, and one was named Gus", each of whom resided in the immediate neighborhood. However, none of these people were subpoenaed as witnesses to corroborate this testimony, and it places somewhat of a burden upon our credulity to believe that the best witness available to defendants did not know the family name of at least one of the occupants of the garage, although they resided in the immediate neighborhood, with the notable exception of her brother, despite the fact that she resided in the property for twenty-nine years. The other witnesses appearing on behalf of defendants were equally as indefinite in endeavoring to establish the status of the property as a "Public Garage."
We, therefore, are of the opinion that the property was not used as a "public garage" during the entire period of ownership by Perrino1924 to 1945; the property was used as a "private garage" and as a storage place in conjunction with the operation of a retail grocery store by Perrino; it was, therefore, conforming to the provisions of Ordinance No. 11,302 C.C.S. and a non-conforming status was not established for the benefit of the property at the time of the adoption of the Ordinance in June, 1929.
We are fully cognizant of the prevailing philosophy of the law that a Zoning Ordinance, being in derogation of the rights of private ownership, curtailing and limiting the use of property, must be strictly construed in behalf of the owner thereof and where exemptions appear in favor of the property owner they should be liberally construed in his favor. We believe that this philosophy of the law is more than a pious formula, to be sanctimoniously observed or repeated at the opening of an opinion and forgotten at the end. However, the very composition of the record militates against the application of this reasoning to this case.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.